M. J. ROBERTS v. GEORGE H. HALE, and WASHINGTON NATIONAL BANK, Appellant.

**Testamentary trusts:** POWER OF TRUSTEE: USE OF TRUST PROPERTY. Where a testator, by an unequivocal provision in his will, authorizes a continuance of his business interests and an investment of his entire assets for that purpose, by a trustee, as he may see fit, the property of the estate used in the business by the decedent, and after his death by the trustee, is answerable for the debts incurred in the execution of the trust.

*Appeal from Washington District Court.*— HON. W. C. CLEMENTS, Judge.

THURSDAY, JUNE 9, 1904.

A. C. HALE, who was the owner of the property in controversy, died testate May 24, 1893.   Prior to her death her husband, George H. Hale, had acted as her agent in carrying on the business of buying and selling grain in the market at Washington, Iowa, and in storing the same in an elevator covered by the mortgage hereinafter mentioned, and in selling the grain so stored.   The will, after directing the payment of all just debts, was in words the following:

(2)   I hereby bequeath and devise to my husband George H. Hale in trust as trustee for my children, Clara B. Hale, Harry C. Hale and Nathan G. Hale my entire estate and property both real and personal, and direct that upon my death he·shall immediately take and retain possession of the same.

(3)   I direct that the said George H. Hale shall hold the office of said trustee during his entire lifetime.

(4)   Said trustee shall, after my death, during the entire term of said trust, continue my business interests and the investment of my entire property, including the management and control of the same, and all business transactions pertaining thereto, as he may see fit, for the financial interests of my said children.   And in the performance and transaction of all matters and duties imposed upon him herein said trustee shall not be subject to or governed by any order of court, and shall be relieved from making report to court of his transaction in the matter unless charged with fraud or inexcusable mismanagement.   All profits arising from the said property in the continuation of my said business by said trustee shall be by said trustee retained in his possession and be by him added to and applied and managed in manner and form identically with the aforesaid trust fund.

(5)   At the·death of my husband, George H. Hale, said entire estate, including all accumulation thereto, shall in equal shares, be delivered and distributed to my aforesaid children named as the beneficiaries of said trust.   But in case any of my children, after my decease, die without issue prior to attaining majority, then the share or interest from my estate to such deceased child shall immediately vest in and become the property in equal shares of my remaining

children, but shall remain subject to said trust and in the control and supervision thereof.

(6) My husband, George H. Hale, shall have no interest in my estate as distributive share or otherwise, except the powers and duties conferred upon him by the terms of this will.

(7) I appoint my husband, George H. Hale, to execute the terms and provisions of this will.

(8) I direct that in the performance and execution of the whole or any portion of the trust provided, and in the execution of the terms and provisions of this will, and in the performance of any obligation or duty herein imposed, the said George H. Hale, shall for each and all be relieved and exempt from giving bond."

Hale acted for a short time as special administrator, and after the will had been admitted to probate as trustee, and in each capacity the business was carried on as before. On the 21st day of October, 1900, he executed his note as trustee to the Washington National Bank for $5,000, and a mortgage on the property in controversy to secure payment of the same. By way of cross-petition in an action to foreclose a certain mortgage executed by A. C. Hale in her lifetime, the bank demanded the foreclosure of this mortgage. The answer of the children, as well as of Hale, put in issue his authority under the terms of the will to incumber the property. Decrees of foreclosure were rendered in the main action, and the real estate sold thereunder, leaving a balance of only $144.85, which was, by order of the court, deposited with the clerk to await the final determination of the issues raised by the cross-petition and answers thereto. Judgment was entered against George H. Hale as prayed, but he was held to have exceeded his authority as trustee in executing the mortgage, and, upon his surrendering all claim to the surplus as trustee, it was ordered to be paid to his children. The Washington National Bank appeals.—*Reversed.*

*H. & W. Scofield,* for appellant.

*H. M. Eicher,* for appellee.

LADD, J.— The deceased had been engaged in the busi-. ness of buying, storing, shipping, and selling grain. Her husband had conducted this business as her agent. . Her will provided for no legacies, and postponed the distribution of the. estate to the beneficiaries until the trustee's death. By its terms she bequeathed and devised her entire estate, real and personal, to. him as trustee during life, for their three children, with the direction that he immediately take and . retain possession. "Said trustee shall, * * * during the. entire term of said trust, continue my business interests and the investment of my entire property, including the management and control of the same, and all business transactions pertaining thereto, as he may see fit, for the financial interests of my said children." The profits of the business were to be added to the trust estate, and held subject to like conditions. Save for fraud or inexcusable mismanagement, no report to the court was to be exacted, and he was relieved from filing bonds. The trustee carried on the testator's business the same as prior to her death, and in connection therewith, deposited money with the cross-petitioner, drew checks and the like, precisely as before, save that he did so as trustee instead of agent. During the fall and winter of 1899 and 1900, or the spring of the latter year, Hale, as trustee, executed three notes to the bank, and made use of the proceeds in purchasing 50,000 bushels of corn. He issued warehouseman's receipts for same, and delivered them to the bank as security. Part was sold and applied on these notes in April, when the note sued on was executed. Later, upon discovering that he was shipping and selling the corn without its knowledge, the bank insisted upon security. He thereupon, in his capacity as trustee, executed a mortgage to secure his note last mentioned. This mortgage covered an elevator used for the storage of grain, and the ground

upon which it stood. The question raised is whether the trustee was authorized by the will to execute this mortgage.

Undoubtedly the law permits a testator to provide in his will for the continuance of his trade or business by an executor or trustee. Such purpose, however, to be of any avail, must appear to have been clearly indicated by the testament. So, too, he may direct what portion of his assets is to be appropriated to effectuating this design, and to what extent his estate shall be held for any indebtedness incurred. In such a case those dealing with the executor or trustee are charged with notice of the limitations imposed by the will, though the executor or trustee will be held personally responsible. In the absence of any express conditions, only the property or fund employed in the business prior to the testator's death is answerable to subsequent creditors. They can only reach the general assets of the estate when the will, in clear and unambiguous terms, so directs. These principles are now generally recognized. *Ex parte Garland,* 10 Ves. 110; *Catbush v. Catbush,* 1 Beav. 184; *Burwell v. Cawood,* 2 How. 560 (11 L. Ed. 378); *Hardee v. Cheatham,* 52 Miss. 41; *Pitkin v. Pitkin,* 7 Conn. 307 (18 Am. Dec. 111); *Willis v. Sharp,* 113 N. Y. 586 (21 N. E. Rep. 705, 4 L. R. A. 493). See authorities collected in 11 Am. & Eng. Ency. of Law, 976. See, also, *Blodgett v. American Nat. Bank,* 49 Conn. 9, pointing out the distinction between continuing business by executor under articles of partnership and authority conferred by will. Whether the property " embarked in trade " be real or personal can make no difference. The test is whether it was a part of the capital devoted by the testator to the prosecution of his business. If so, it is answerable for the debts incurred by the executor in continuing the enterprise in accordance with the directions of the will. Possibly the mere use might often prove sufficient, but, in the absence of such limitation, no trace of which is found in the

will under consideration, it is to be presumed that the testator intended the property itself to be answerable for any trade debts which might be incurred in continuing his enterprise. *Devitt v. Kearney,* 13 Law Reports (Ireland) 45; *McNiellie v. Acton,* 21 L. & Eq. 3; *Dimrock v. Dimrock,* L. T. N. S. 494; *In re Cameron,* 26 Ch. Div. 10.

In the instant case the property mortgaged was used for the storage of grain by the decedent, and after her death by the trustee. It was distinctly a part of the capital set apart for the prosecution of the business the trustee was to continue, and as such, was answerable for debts incurred by him in accomplishing that object. The suggestion of appellee that the bank owned the corn, and Hale converted it to his own use, is disposed of by the uncontradicted statement of the cashier that the warehouse receipts were taken as security. These amounted to no more than statements by the trustee himself that the corn was in the cribs. The loan was for a purpose connected with the business, and the grain actually purchased with the money borrowed. It was afterwards sold at a profit. According to the record, the estate lost nothing by the transaction. The trouble came from some other source, for the proceeds were not applied on the debt incurred for its purchase. As seen, the note was executed for an indebtedness for which the capital invested in the business was chargeable, and the elevator property was a part of this. But for the provisions in the will, there might be some force in appellee's contention that, even conceding all this, the trustee ought not to be permitted to incumber the property for money previously borrowed, nor mortgage it, when this might tend to terminate, rather than continue, the enterprise. The testatrix, however, reposed the fullest confidence in the trustee, and directed him to " continue my business interests and the investment of my entire property, including the management and control of the same, and all business transactions pertaining thereto, as he may see fit."

It was for him to determine, then, which would be preferable — to execute the mortgage, or to allow the bank by other means to seize the property of the estate to satisfy its claim. Appellee argues that, as he was to " immediately take and retain possession " of all the property, he could not dispose of it. But this was for the purpose of carrying out the will; otherwise the grain on hand must have been retained until his death or it decayed. Suppose, in the exigencies of business, the elevator became unsuitable for use; must the trustee have kept it at all hazards? The clause of the will quoted confers on the trustee the broadest powers, and within them is surely the authority to execute this mortgage as a business transaction pertaining to the testator's estate. Again, it is urged that to pledge the trust fund is inconsistent with the provision in the will that " all profits * * * shall be by said trustee retained in his possession and * * * added to * * * and . * * * managed * * * with * * * trust." Undoubtedly the testator, like others, in engaging in a business enterprise, contemplated profits only, and anticipated that her entire estate, with large accumulations, would be left for distribution to the heirs. She risked the capital invested, however, and the distribution directed was contingent on there being profits or estate left to be divided.— REVERSED.