[Civ. No. 4764.   First Appellate District, Division One.—June 11, 1926.]

## ANITA CHRISTAL PURDY, Respondent, v. ROBERT JOHNSON et al., Trustees, etc., Appellants.

[1] TRUSTS—MAINTENANCE AND SUPPORT OF BENEFICIARIES—PAYMENT TO ATTORNEY—AUTHORIZED EXPENDITURES—EVIDENCE—ERRONEOUS ACCOUNT.—In this proceeding by a beneficiary against the trustees under a will for an accounting and to enforce the conveyance to plaintiff of her share of the trust property, the mere fact that defendants, in an earlier account which had been allowed and approved but which they had consented to have set aside, had erroneously listed a certain sum as having been paid to an attorney for legal expenses, an expenditure which defendants were not authorized to make out of the trust funds, did not justify the court in disallowing said item of expenditure, where the undisputed evidence showed that said sum was in fact paid for the maintenance and support of the beneficiaries, who were at the time minors, an expenditure which defendants were authorized to make out of the trust funds, that said sum had been placed by defendants in the hands of the attorneys for the guardian for said beneficiaries, at the request of said guardian, and that a proper voucher showing that the item was paid for the support and maintenance of the beneficiaries accompanied the accounts.

[2] ID.—PAYMENTS TO GUARDIAN—IMPROPER USE OF MONEYS.—Where the trustees under a will, in accordance with express authority therein contained, and pursuant to the demand of the guardian of the beneficiaries, who are minors, pay money to said guardian for the support and maintenance of the beneficiaries, said trustees thereafter have no control over the use of said money by the guardian, and any improper use thereof is a matter to be settled by the court appointing said guardian at the time his account comes up for settlement.

[3] ID.—MINGLING OF FUNDS—COMPOUND INTEREST—EQUITY.—Where trustees have mingled money belonging to a trust with their own funds and used them for their own advantage, courts will charge them with compound interest with annual rests; but the question whether such interest should or should not be charged depends upon the circumstances of the particular case, and they may be

3.  See 25 Cal. Jur. 342,

such that a mere restoration of the property, or its value, without any interest, would be all that justice may require.

[4] ID.—JUDGMENT—ABILITY TO PAY.—Testamentary trustees cannot complain of the fact that, by reason of the lapse of years, the rendering of a judgment against them, allowing compound interest with annual rests, will tax their ability to pay, where the evidence justifies that result.

[5] ID.—GOOD FAITH—LIBERAL TREATMENT—EQUITY.—When acting in good faith, trustees should be treated by a court of equity with liberality and indulgence.

[6] ID.—ACTION FOR ACCOUNTING—EVIDENCE—COMPOUND INTEREST—EQUITY.—In this proceeding by a beneficiary against the trustees under a will for an accounting and to enforce the conveyance to plaintiff of her share of the trust property, there having been no evidence showing any serious malversation of the trust as by mingling the trust funds with the private funds of the trustees, or misappropriating or losing them, and no claim that every cent received by defendants from the trust estate had not been fully accounted for, or that the estate had suffered any loss by reason of the acts or methods of defendants, and the annual balances having been constructive only, predicated upon the rejection of a certain proper item of expenditure and the disallowance by the court of any compensation, which had been allowed in earlier accounts which defendants had consented to have set aside, the imposition of compound interest with annual rests was inequitable.

[7] ID.—ALLOWANCE OF COMPENSATION—LEGAL RETENTIONS OF MONEY—ERRONEOUS INTEREST CHARGE.—Where the earlier accounts of said trustees allowed them certain amounts as compensation for their trusteeship, the retention by them of said sums was legal and justified; and when said trustees thereafter, and long after said accounts had become final, consented to set aside said accounts, it was not equitable or just to declare that said sums should have been invested by them and to charge them interest thereon.

[8] ID.—INADVERTENT ERRORS—DISALLOWANCE OF COMPENSATION.—The duties of the trustees having been onerous, and the trust estate having trebled in value during the trusteeship, and been preserved intact, the fact that, through some inadvertence and without any intention on their part to commit a deliberate wrong or to take advantage of their relations, the trustees made some errors in their accounts, did not justify the court in penalizing them by the forfeiture of any compensation.

---

(1, 2) 39 Cyc., p. 431, n. 55.    (3) 39 Cyc., p. 422, n. 97, p. 423, n. 4, p. 424, n. 15, p. 429, n. 43, 44, p. 430, n. 52.    (4) 39 Cyc., p. 430, n. 52 New.    (5) 39 Cyc., p. 295, n. 10, 12.    (6) 39 Cyc., p. 429, n. 41. (7) 39 Cyc., p. 493, n. 10.    (8) 39 Cyc., p. 496, n. 22.

APPEAL from a judgment of the Superior Court of San Benito County. John L. Hudner, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

C. F. Lacey for Appellants.

Houghton & Houghton and Edward T. Houghton for Respondent.

TYLER, P. J.—Appeal by defendants from a judgment obtained against them in an action to enforce a trust and for an accounting. This is the second appeal in the case.

At the first trial the court found a balance in favor of the defendant trustees in the sum of $8,996.17. An appeal was taken by the plaintiff and the judgment was reversed. (*Purdy* v. *Johnson*, 174 Cal. 521 [163 Pac. 893].) Upon retrial a different department of the superior court found a balance in favor of the plaintiffs amounting to the sum of $10,981.74. The present appeal is from this judgment.

The plaintiff is the granddaughter of one Alberto Trescony, who died testate in the year 1892. The appellants J. A. Trescony and Robert F. Johnson were respectively son and son-in-law of the testator and were the executors of his will and they were also named therein as trustees of an undivided one-third of the residue of the estate for the benefit of the plaintiff and her brother Leo A. Christal, who were the children of a deceased daughter of the testator. At the close of the administration of the estate a decree of distribution was made, by the terms of which one-third of the residue of said estate was distributed to the defendants as trustees for the benefit of plaintiff and her brother until they should reach the age of thirty years, at which time their respective shares were to be transferred over to them upon certain conditions. The estate was distributed April 2, 1894, and for a time all of the real property was managed as a whole, but on August 2, 1895, partition was had, and through these proceedings there was set apart to the defendant trustees some 15,336 acres of land in severalty in lieu of the one-third interest theretofore distributed to them.

The complaint contains two counts, the second of which charges misconduct and impropriety on the part of the defendants in the management of the trust estate. It is there alleged that while acting as trustees, defendants filed some six accounts of their transactions, five of which were settled by the court and had become final. It is then charged that plaintiffs did not have notice or knowledge of the presentation of these accounts, or of the hearing and settlement thereof. Then follow averments that defendants have carelessly and negligently managed their trust in certain particulars and so carelessly kept the accounts thereof as to deprive plaintiff of a large amount of rents, income, and assets to which she is entitled. With reference to the sixth account it is charged that as a result of the failure of the trustees to keep proper accounts the plaintiff has been wrongfully debited with a sum of money as due from her to the trustees, whereas, in truth and in fact, the trustees are indebted to her in a sum exceeding $7,000.

The prayer of the complaint is that the court enforce the trust by directing that defendants convey to plaintiff an undivided one-half interest in the trust property; that the orders of the superior court settling the first five accounts be set aside and corrected and modified to conform with the true facts, and that said trustees be compelled to account to the plaintiff for all their dealings and transactions with the property of the trust estate; that on such accounting the trustees be charged with interest from the time of the reception by them of all funds wrongfully withheld.

The answer of the trustees denies all of the alleged misconduct and declares the willingness on their part to transfer to plaintiff her share of the estate. It alleges that plaintiff is indebted to defendants in a sum approximating $14,000. The answer further denies all of the charges affecting the propriety or conclusiveness of the settling of the first five accounts, but declares that "inasmuch as the plaintiff seems to be dissatisfied with the accounts referred to in her complaint" the defendants join in plaintiff's prayer and ask that the orders settling said five accounts be vacated, and that a new account be taken covering the entire period of the duration of the trust, and that upon payment of the amount found to be due by or to the plaintiff, she receive

from the defendants a conveyance of her interest in the trust property.

Upon the first trial as above indicated judgment went in favor of defendants in the sum of $8,996.17. All of the charges made by plaintiff with reference to concealment, misconduct, or negligence by the trustees were there negatived by the findings. It was also found that while there were some errors in the accounts, such errors were inadvertently made, and that in all matters connected with the trust estate and the management thereof the trustees had acted with the utmost fidelity toward the beneficiaries and had conducted their trust with prudence and economy. Among the findings was one to the effect that the sum of $500 per annum was a reasonable amount to be allowed to said trustees as their compensation.

The findings were attacked on appeal. The judgment in favor of the trustees was reversed. Several of the disputed items in the account were reviewed on this appeal, and it was there held that the allowance of these disputed items by the lower court justified a reversal of the judgment. The case was therefore remanded for the taking of a new account in accordance with the established principles of equity. In reversing the judgment the court had occasion to point out that the lower court adopted a course with reference to the trial that was irregular. The plaintiff had insisted that the trustees prove the correctness of the account. The course adopted permitted them to take the stand and subject themselves to cross-examination without any direct examination on their own behalf.

This was held to be a fundamental misapprehension of the nature and extent of the obligation of trustees to account to their beneficiaries. It was declared that the burden of proof was upon the trustees to establish affirmatively the propriety of the charges and credits which were assailed, and that while the adherence of this rule might result, considering their method of keeping the accounts, in the trustees being compelled to forego repayment of sums which they may have had properly and in good faith expended for the benefit of the trust, and being charged with having received money in cases where they had not in fact received it, their good faith could not save them from the consequences of this neglect, and whatever doubts might arise from their

failure to keep proper records, or their inability to estab-
lish all the items of their accounts, must be resolved against
them.

Appellants do not here complain of this rule as it is
admitted that the trustees were farmers, unfamiliar with
bookkeeping and who had large interests of their own to
attend to, and did not keep full and accurate accounts of
their transactions, in consequence of which they are mulcted
in a large sum of money for which they are morally entitled
to credit.    They do contend, however, that although the
trial took place some twenty-four years after the creation
of the trust, the record shows clearly that as to certain of
the disallowed items, everything necessary to support them
as proper charges, fully appeared.    The denial of a credit
of these charges, and the infliction of compound interest as
a penalty, it is claimed, accounts for the wiping out of the
balance which was found in favor of the trustees at the
first trial, as predicted by the court on appeal, and is largely
responsible for creating the heavy balance now found against
them, a sum it is admitted, considering the passing of time
and the accumulation of legal interest, with annual rests,
has reached such proportions as will tax the ability of appel-
lants to pay.    [1]   One of the items which it is contended
was wrongfully disallowed has reference to the sum of
$2,500 claimed to have been paid by the trustees for the
maintenance and support of the beneficiaries.    With refer-
ence to this item the record shows that on November 9,
1895, the trustees filed their first account, which included
the item in question.    The trial court on the instant hear-
ing refused to allow the trustees credit for this expenditure
and charged them seven per cent simple interest thereon
from November 30, 1894, to November 30, 1908, a period of
some fourteen years, aggregating in principal and interest
the sum of $4,950.    The facts in connection with this item
show that one Dr. J. F. Christal, a son-in-law of the testator,
was the father of the two beneficiaries.    That there was
ill feeling between these parties is evidenced by the will of
Alberto Trescony, for it is provided therein that in case
Dr. Christal shall fail, for any reason, to properly provide
for these beneficiaries, the trustees shall pay out of their
interest in the estate such amount as will, in their judgment,
suitably and properly provide for them.    The will also con-
tains a direction that in no event shall any of the moneys

so paid or expended be placed in the hands of or be handled by Christal. In this connection the will further declared it to be the unqualified wish and direction of the testator that the executors and trustee see to it that the said Christal did not enjoy or get into his hands anything that the testator ever owned.

The will was admitted to probate in October, 1892. Thereafter Dr. J. F. Christal, the father of the beneficiaries, was appointed guardian of their persons and estates, and these beneficiaries, through their guardian, brought an unsuccessful proceeding to revoke the probate thereof. S. F. Geil and Messrs. Pierson and Mitchell were the attorneys representing the guardian in this litigation. The beneficiaries during the early years of the trust resided with their relatives, the trustees, and also at times with their father and Nellie Christal, their stepmother. Dr. Christal, being without means, addressed a communication as guardian of the minors to the trustees on April 3, 1894, authorizing and directing them to pay to Nellie Christal the sum of $2,500 for the maintenance and support of the minors from the date of the death of Alberto Trescony to the date of the order, a period of some two years. The notice further authorized them to continue the payment of the sum of $200 per month from the date of the order until written notice to the contrary. The trustees were further advised that a receipt for the amount of $2,500 had been entrusted to Nellie Christal, who had placed the same in the hands of Pierson and Mitchell and S. F. Geil for the purpose of collection. Acting upon the authority given them under the will and in pursuance of the demand of the guardian, the trustees paid the amount and a receipt was given to them signed by the guardian Dr. Christal and his wife, Nellie Christal, and countersigned by the attorneys above mentioned. Thereafter an order was made by the superior court directing the trustees to pay to the guardian the sum of $250 monthly for the care and maintenance of the minors. The first account filed by the trustees included the charge of $2,500. This account was prepared by the attorney for the trustees and in listing the expenditures in the account he recited that it was paid to Geil under an agreement with the executors of the estate of Trescony. The instant account was prepared by an expert accountant who listed

the item as "S. F. Geil, Legal Expenses." The first account was settled and allowed on May 16, 1896, and from that time until the commencement of this action on November 21, 1911, a period of some fifteen years, no objection was ever made to it. Plaintiff had been represented by a guardian until March 21, 1898, when the period of her minority ended. She reached the age of thirty years on March 21, 1910, and on November 18, 1911, she instituted the present litigation, the other beneficiary not joining. In passing upon this particular item of the account in the instant proceeding the trial court was of the opinion that it was an improper payment to attorneys employed by the guardian to contest the will of Trescony and for that reason rejected it.

We are of the opinion that there is no evidence in the record to support this action. While it appears that an order was on September 6, 1893, made by the superior court authorizing the guardian to enter into a contract with the attorneys for such purpose, the order expressly provided that compensation should be paid to them in the event only of a successful prosecution of such contest. The litigation being unsuccessful, they were entitled to nothing.

The voucher accompanying the accounts shows that the item was paid for the support and maintenance of the minors. It recites the demand of the guardian upon the executors for the amount covering the period above mentioned, the receipt of the sum, signed by both the guardian and his wife, and countersigned by the attorney. The manner of the listing of the items by the parties who prepared the different accounts no doubt controlled the court in reaching the conclusion that the expenditure was for legal services. The voucher disproves any such theory and the positive testimony of the trustee Trescony shows that he was no party to any agreement that the sum should be used for the payment of attorney's fees, but that, on the contrary, the payment was made for the support and maintenance of the minors for the period stated as recited in the vouchers from which the accounts were made up. There is nothing in the record to dispute this evidence. It is true that during his examination he stated that he presumed that some of it might have been used for attorney's fees, but that he

knew nothing at all about the matter. The only fair construction to be given to his testimony as a whole is that the trustee paid the sum for the support of the beneficiaries under the power given to them and in compliance with the imperative demand of the guardian and his attorneys. Mr. Geil, Mr. Mitchell, Dr. Christal, and Nellie Christal were all dead at the time of the instant hearing, and in consequence no evidence could be obtained from them on the subject. [2] Even conceding that an improper use of the funds had been made by the guardian of the beneficiaries, the trustees were in no position to control such a situation. That was a matter to be settled by the court appointing the guardian when his account came up for settlement. However this may be, and in conclusion upon this subject, we are of the opinion that there is no evidence in the record from which the trial court could rightfully conclude that the item in question was paid for any other purpose than that stated in the voucher, namely, for the support and maintenance of the minors.

The trustees were authorized under the express terms of the trust to make such a payment and were justified under the facts in doing so. The rejection of this item, therefore, was without warrant, and the trustees should receive credit for the same. [3] Appellants further complain that the portion of the decree which charges them with compound interest with annual rests is neither equitable nor just, as there was no actual bad faith or intentional wrongdoing on their part. The theory upon which this charge was imposed is reflected in the findings of the trial court to the effect that the trustees failed to invest the trust funds, and wrongfully and fraudulently mingled a large amount thereof with their own, for their private use and benefit. It is claimed that there is nothing in the record that supports this conclusion.

The rule is firmly established in this state by a long and unbroken series of decisions, and may now well be regarded as one of the elementary truths of the law, that where trustees have mingled money belonging to a trust with their own funds and used them for their own advantage, courts will charge them with compound interest. Section 2262 of our Civil Code provides, in substance, that if a trustee

omits to invest trust funds he must pay simple interest thereon, if such omission is negligent, and compound interest if it is wilful. The latest expression upon this subject is found in *Gaver* v. *Early*, 191 Cal. 123 [215 Pac. 394]. This principle is indisputable and in fact it is not here disputed. The rule is not adopted for the purpose of punishing the trustee for any intentional wrongdoing in the use of the trust funds, but rather to carry into effect the principle, enforced by courts of equity, that a trustee shall not be permitted to make any profit from the unauthorized use of such funds; it is intended to secure fidelity in the management of trust estates in order to fully realize any profit that the trustee may have made. In cases where the rule is properly applied legal interest compounded annually will be charged. (*Miller* v. *Lux*, 100 Cal. 609 [35 Pac. 345, 639].) The question whether such interest should or should not be charged depends, however, upon the circumstances of the particular case, and they may be such that a mere restoration of the property, or its value, without any interest, would be all that justice may require. (*Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474 [111 Pac. 360].)

The record in the case is very voluminous, consisting of several thousand pages, covering receipts and expenditures for a period of over fifteen years. We have read the same carefully and a somewhat extended review of the facts becomes necessary for a complete understanding of the situation. While the estate consists of a large acreage, the lands are arid, and in consequence their yield is uncertain and during dry years they are practically unproductive. Under these circumstances the rents and profits from the estate have been comparatively small, though the value of the estate is admitted to be greatly in excess of $300,000.

As indicated above, the testator died in the year 1892. Since that time and up to the commencement of this action, some eighteen years thereafter, the trustees had filed five accounts. They were not more frequently filed for the reason that there was little or no balance to account for. These accounts had all been settled and no appeal was ever taken from any of them and they had become final. In the present action fraud on the part of the trustees was charged. Defendants thereupon consented to have the settlement of

the accounts vacated and set aside so that the truth of the
charges might be investigated. Upon the first trial the find-
ings of the court were against plaintiff's charges, it being
determined that the trustees had acted in good faith and
without any intent to deceive or overreach the plaintiff in
any way. Our supreme court, in passing upon the finding,
expressed the view that it did not dissent from this conclu-
sion and that it was fully supported by the evidence.
(*Purdy* v. *Johnson,* 174 Cal. 521, 527 [163 Pac. 893].) The
case was reversed, however, for the reasons heretofore stated.
Upon the present trial the court found defendants to have
been guilty of fraud and with failure to invest the trust
funds, and it imposed the interest here complained of, with
the result that the amount of defendants' former judgment
was completely wiped out and the present judgment re-
sulted. A perusal of the first five accounts show that the
trustees at no time during the period covered by them had,
as a matter of fact, any funds whatsoever to invest, but, on
the contrary, the estate was indebted in a large sum. The
balance which the trial court here found to be due is a con-
structive one merely and is made up by the rejection of
certain items contained in the original accounts, including
the $2,500 item above discussed, together with the rejection
of all claims for any compensation whatsoever to the trus-
tees covering the many years of their stewardship and the
imposition of compound interest with annual rests on yearly
balances, except upon the amount of $2,500 paid for the
maintenance and support of the minors, and the amount
allowed the trustees as compensation for their services upon
which items simple interest was charged. But for this ac-
tion of the trial court no balance would have existed each
year, and there would have been, in consequence, no funds
to invest. The present accounting includes a calculation
only to November 30, 1908. The trial took place in 1918.
If the action of the trial court finds support in the evidence
it will result in the accounting for the intervening nine years
in penalizing these defendants with seven per cent interest
compounded annually on the present balance, which addi-
tional interest amounts to the sum of $10,829.93. Had the
other beneficiary joined in this action the sum would be
twice the amount. **[4]** It is conceded by plaintiff that the

judgment here recovered, considering the passage of time, will tax the ability of the defendants to pay. Of course, if the evidence justifies this result defendants cannot complain. In support of their contention that they have acted in good faith, our attention is called to the circumstance of their agreement to have the settlement of their former accounts which had long been settled and had become final, set aside, an act, it is claimed, they would have not consented to had they been dishonest or disloyal to the trust reposed in them. These accounts, as has been stated, showed that at no time did the trustees have any funds to invest, and but for the fact, that they had waived any right to stand upon the same, a large balance would appear in their favor. [5] When acting in good faith, trustees should be treated by a court of equity with liberality and indulgence. (*Ellig* v. *Naglee,* 9 Cal. 695.) It has been said that the hardest demand that can be made in equity is to hold a trustee answerable for what was never in his hands, or for a loss not caused by his wilful default. (*Estate of Cousins,* 111 Cal. 451 [44 Pac. 182].) [6] From a careful reading of the voluminous record we are of the opinion that there is nothing therein contained to show that there was any serious malversation of the trust as by mingling the trust funds with the private funds of the trustees, or misappropriating or losing them. There is no claim here made that every cent received by defendants from the estate has not been fully accounted for. They were farmers and inexperienced with the proper method of keeping accounts, but they attempted to do so in their own way. They had large farming interests to look after. They kept proper vouchers, however, for all their expenditures except in a few instances. They were late at times in crediting sums collected, but such funds were all fully accounted for. They made some mistakes, but with no desire on their part to defraud their young relations. These errors did not always operate in their favor. On two occasions the trustees, in anticipation of the allowance of the annual compensation awarded them, drew checks upon the trust fund for their own private purposes before an account was approved and settled. On one occasion, through mistake, they charged the entire cost of a division fence to the estate, when the charge should have been but one-half only. These omissions and

errors were fully explained and accounted for by them and no attempt was ever made to conceal the true state of facts. There were, in the five accounts rendered, hundreds of items of receipts and expenditures, but comparatively few of these were challenged. Some were disallowed, and properly so, as they could not be satisfactorily explained. Our supreme court, however, on the former appeal predicted that this very condition would happen, for it is there said that, considering the circumstances of the case, in the taking of a new account it would be probable these trustees would be compelled to forego repayment of sums which they had properly and in good faith expended for the trust, and would be charged as having received money in cases where they have not, in fact, and could not with reasonable diligence have received it. [7] As above recited, in their original accounts the trustees were allowed an annual compensation for their trusteeship. Under the present accounting these items were rejected and the trustees are charged with simple interest upon these sums. It does not seem equitable or just to declare that these amounts should have been invested by them when under the order settling the accounts the trustees were declared to be entitled thereto. The retention by the trustees of these sums was legal and justified at the time they were withheld. The evidence is voluminous, but enough has been reviewed to indicate the character of the wrongdoing that is charged. The estate, however, so far as the record shows, has lost nothing, but all receipts have been fully accounted for, and the former accounts as settled and allowed showed no balance of funds at any time that could have been invested. The present annual balances are, as before stated, constructive only and are entirely built up and created in the manner above indicated. Under these circumstances we are of the opinion that the imposition of compound interest on the annual balances was unjustified. The same may be said of the action of the court in denying the trustees any compensation for the long period of their stewardship. It is not disputed that when the original application was made by the trustees for compensation the sum of $500 per annum each was allowed at the suggestion of the trial court. No formal order was made fixing this amount, but it formed the basis of the charge made there-

after by the trustees and the amount was never subsequently objected to. That this sum was a reasonable amount there can be no question. The estate was a large one, being originally valued at over $120,000, and the statement of counsel for appellants that it has since trebled in value and been preserved intact is not denied. The duties of the trustees were onerous. They consisted of the overseeing of the properties; the keeping up of the buildings and fences, borrowing and advancing money for the payment of taxes and the support of the beneficiaries and other expenses, keeping accounts, procuring tenants, looking out for the grain when it was threshed, the placing of insurance, the building of roads, digging of wells and other active duties incident to the proper management of an estate of this character.

[8] The trustees in the settlement of their various accounts were allowed the sum stated for their services, and in consequence were justified in retaining the same to their own use. The court in casting the instant account disallowed any allowance whatever to them and they are penalized with a charge of seven per cent simple interest on these sums so previously allowed, for their failure to invest the same for the benefit of the estate. The disallowance was made on March 30, 1922, some thirteen years after the entry of the order settling the trustees' fifth account and twenty-six years after the decree settling their first account, at which time their compensation had been definitely fixed. Under these circumstances it seems manifest to us that the action of the court in disallowing the trustees any compensation whatsoever, and charging the interest mentioned upon sums that the trustees were found to be entitled to and which they were, therefore, under no obligation to invest for the benefit of the estate at the time they were received, was without warrant. Conceding them to have been entitled to compensation, the amount allowed them was certainly reasonable considering their duties, and, as suggested by appellants' counsel, it would be a hard task to procure a manager, good or bad, for the vast estate involved for the allowed compensation. Complaint is also made of the action of the court in permitting the trustees to retain only the sum of $1,000 to meet current accounts and charging compound interest continuously upon the remainder found to

be due. It appears from the record that the thirtieth day of November of each year was fixed by the court as the date for casting annual balances. The trustees were allowed to retain the sum of $1,000 from each annual balance found in favor of the beneficiary, to cover expenditures for current operating expenses for the succeeding year before any new income could be derived from the trust property. That this sum was entirely inadequate for a number of the years there is no question. It is not disputed that for at least seven years the disbursements exceeded the receipts even with the allowance of the $1,000 permitted to be retained, and yet the trial court in the present account under the adopted method, in effect, charged the trustees with interest on the amount they actually paid out under approved vouchers, for failure on their part to invest the same. The action of the court in this particular cannot be sustained. And, finally, appellants complain of the disallowance of certain items that had been approved in the former accounts.

A review of each of these items would involve a critical statement of the facts concerning each expenditure and add to this lengthy opinion without answering any useful purpose. It is sufficient to say, so far as this objection is concerned, that we have examined the evidence upon the items and are of the opinion that while there is doubt concerning some of them, the court was justified in resolving that doubt against the trustees.

In conclusion it may be said that while the record contains some errors affecting the trustees' accounts, it appears therefrom that such errors arose through inadvertence and without any intention on the part of the trustees to commit a deliberate wrong or to take advantage of their relations, and the evidence is insufficient to justify the penalizing of the trustees by the imposition of compound interest and the forfeiture of any commission for the services performed by them for the benefit of this large estate. As above indicated, the annual balances found to be due are constructive ones merely made up in the main by the rejection of the $2,500 item discussed; the rejection of all claim for services and the imposition of interest for failure to properly invest funds which were never actually in the hands of the trustees, but for the rejection of the items previously allowed.

The finding of the trial court, therefore, that the trustees wrongfully mingled the trust funds with their own and failed to invest the same finds no support in the evidence as there were no actual funds in their hands at any time which they could possibly have invested. Plaintiff and defendants both join in the request that in the event of a reversal no new trial be ordered, but that the trial court be directed to modify its judgment as will in the opinion of this court do justice between the respective parties. In compliance with this request it is ordered that the court below strike a new account in which the trustees be credited with the $2,500 item expended by them for the support and maintenance of the beneficiaries; that the trustees be allowed a reasonable sum for their compensation in accordance with equitable principles, and that simple interest only be charged against them for the amount, if any, found to be due the plaintiff.

With this modification the judgment will stand affirmed.

Cashin, J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 10, 1926.