[S. F. No. 15193. In Bank.—January 28, 1935.]

ANITA CHRISTAL PURDY, Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Appellant.

C. F. Lacey, Louis Ferrari and Keyes & Erskine for Appellant.

Edward T. Houghton and Houghton & Houghton for Respondent.

THE COURT.—The plaintiff sued to recover a trust fund deposit of $7,296.19 applied by the predecessor of the defendant bank under its claim of banker's lien on a certain promissory note for $14,500 executed by the trustees of the trust property. The plaintiff recovered judgment and the defendant appealed.

Alberto Trescony died testate in 1892. In 1894, pursuant to the provisions of his will, there was distributed to Julius A. Trescony and Robert F. Johnson, as trustees, a one-third interest in certain real property of the estate consisting of some 45,000 acres of grain land, the same to be held, invested, managed and controlled for the benefit of Anita Christal, now Anita Christal Purdy, the plaintiff herein, and her brother Leo Christal, the children of a predeceased daughter of the testator, until they attained the age of thirty years. In 1895 the estate was partitioned and the trustees received title to 15,336 acres, the balance going to other issue of the testator including Julius A. Trescony, a son of the decedent and one of the trustees herein, and a daughter of the deceased, the wife of Robert F. Johnson, the other trustee. In 1895 the trustees opened an account with the Salinas City Bank, originally the defendant herein but since merged with ·the predecessor of the defendant, Bank of America National Trust & Savings Association, in the names of themselves as trustees for Anita Christal and Leo Christal. Between the years 1895 and 1908 an overdraft in the· account to the extent of $13,836.97 was created. In January, 1909, the trustees opened a new account with the bank in their names as trustees for Anita Christal Purdy to which they caused to be charged the full amount of the overdraft. In September, 1909, they executed and delivered to the defendant their promissory note for $14,500, signed by themselves as trustees for Anita Christal Purdy and Leo Christal, which purported to cover the amount of the overdraft. On October 30, 1916, there appeared on the bank's books as a credit in said trustees' account the sum of

$7,296.19. It is conceded that this represented funds belonging to the trust estate of Anita Christal Purdy. On the same date the bank applied the credit as part payment on a renewal note of $14,500 dated December 20, 1914. In the same year, 1916, the plaintiff, having attained the age of thirty years, brought the present action to recover the amount of the credit, alleged by her to have been wrongfully appropriated by the bank.

■ The defendant contends that it has the right to claim the credit as an offset by virtue of the banker's lien authorized by section 3054 of the Civil Code and recognized and applied in *First National Bank of Corona* v. *Caplen*, 39 Cal. App. 619 [179 Pac. 708]. It also contends that pursuant to section 2244 of the Civil Code it was not required to see to the proper application of the funds drawn by the trustees. This, however, is not a case such as *State* v. *Farmers' & Merchants' Bank*, 112 Neb. 840 [201 N. W. 897], wherein the plaintiff sought to recover from the bank certain trust funds paid out by the bank on the trustees' checks and claimed to have been misapplied by the trustees. In such a case the power to draw out trust funds on the trustees' checks is not questioned and the bank is not required to see to their proper application. A distinction between that case and the case where the plaintiff is seeking to recover a deposit of trust funds appropriated by the bank to apply against the indebtedness of the trustee or the trust estate was pointed out in the case of *Keeney* v. *Bank of Italy*, 33 Cal. App. 515, at page 518 [165 Pac. 735]. The affirmation of the contention that the bank is not required to ascertain that the moneys drawn by or loaned to the trustees have been applied to trust purposes does not dispose of the main issue in this case, which is whether the trustees had the power to borrow the funds for which the note was given.

The bank could not apply the trust funds to a personal indebtedness of the trustees. (*Keeney* v. *Bank of Italy, supra.*) The answer to the question whether the bank may claim the lien provided by section 3054 of the Civil Code by applying the deposit of trust funds to the overdraft evidenced by the trustees' note depends, therefore, upon whether the obligation was an obligation of the trust estate. ■ Under the provisions of section 2267 of the Civil Code it was an obligation of the trust estate if the trustees had

authority to borrow the funds for the purposes of the trust, i. e., to manage and conduct the 15,000-acre ranch. (*Irvine* v. *MacGregor*, 203 Cal. 583, 586 [265 Pac. 218] ; 25 Cal. Jur. 335.) No claim is made that the authority is expressly conferred by the language of the testamentary trust or by the provisions of the code; but it is contended by the defendant that from the history of the operations of the trustees and from the facts produced on the trial, it is conclusively shown that the power to borrow money was necessarily incident to the power to manage and conduct the ranch in order to preserve the estate from appreciable loss.

We think the contention must be sustained. There is no conflict in the evidence on any material issue. The trustees were bound and it was their duty to operate the ranch to the best interests of the beneficiaries. It is indisputably shown that the extensive acreage was not productive in every year. The history of the operations and production of the ranch as reflected in the decisions in *Purdy* v. *Johnson*, 174 Cal. 521 [163 Pac. 893], and *Purdy* v. *Johnson*, 78 Cal. App. 310 [248 Pac. 764], and in the trustees' final account attached as an exhibit to the plaintiff's supplemental complaint in the present case, discloses that the land was practically unproductive except in years of sufficient rainfall, and that in dry and semi-dry seasons the receipts barely met the expenses of operation or fell short thereof. It is also shown that the court in settling the several accounts of the trustees during the period when the overdrafts were created, allowed but $1,000 to be retained by the trustees in each year with which to pay the expenses of conducting the ranch during the succeeding season. That this was an inadequate sum for the purposes contemplated is obvious, and was also so considered by the court in deciding the case of *Purdy* v. *Johnson*, 78 Cal. App. 310, at page 324 [248 Pac. 764]. That amount was barely sufficient to pay taxes. It would have been a violation of the trust reposed in them if the trustees for lack of funds had allowed the ranch to remain idle and depreciate. In such a case it is no answer to say that they could have applied to the court to borrow such funds each time the necessity arose to do so in order to carry on operations. The decisions in *Purdy* v. *Johnson*, 174 Cal., at page 530 [163 Pac. 893], and Id., 78 Cal. App., at page 323 [248 Pac. 764], indicate that such

course was not required if otherwise the necessity to borrow existed. In the latter case the court recognized that borrowing money for the payment of taxes and the support of the beneficiaries and other expenses was one of the many onerous duties of the trustees. No charge of bad faith or misappropriation was ever sustained by the plaintiff. The most that is shown by the foregoing cases of *Purdy* v. *Johnson, supra*, is that the trustees were farmers unfamiliar with the keeping of accounts and did not always record full and timely reports of all their operations, although all funds received by them were fully accounted for. Whatever loss, if any, they personally were compelled to sustain by virtue of that shortcoming was undoubtedly reflected in the amount found to be due from them to the plaintiff by the order of the court approving and settling the final account of the trustees, and in the account as finally settled which was the subject of the litigation in the case of *Purdy* v. *Johnson, supra*. In the present case there was on attempt to show that the trustees were insolvent or unable to respond to the plaintiff's claim against them for the balance due her. The plaintiff does not contend that the credit applied to the indebtedness involved would not approximate the proportion thereof chargeable to trust funds in which she had a beneficial interest.

From the record it is apparent that the trial court was of the opinion that the trustees were not empowered to borrow funds for trust purposes so as to bind the trust estate without first obtaining an order of court authorizing them to do so. The court found that the notes of the trustees were executed and delivered without first obtaining such an order.

The plaintiff does not question the authorities which hold or recognize that the trustees as general agents for the trust property have power to borrow money when the exercise of such power is necessary to protect the trust estate and the interests of the beneficiaries. (65 Cor. Jur. 710; *Consolidated Nat. Bank* v. *Pacific Coast S. S. Co.*, 95 Cal. 1, 12 [30 Pac. 96, 29 Am. St. Rep. 85]; *Roberts* v. *Hale*, 124 Iowa, 296 [99 N. W. 1075, 1 Ann. Cas. 940]; *Barnes* v. *Lyles*, 110 S. C. 465 [96 S. E. 723].) The plaintiff relies upon decisions of this state and other jurisdictions where it has been held that the power did not exist under the facts of the particular case because not implied from any necessity in the management of the property or business. How-

ever, in those cases, as in *Consolidated Nat. Bank* v. *Pacific Coast S. S. Co., supra,* the existence of the power, in the absence of express authority, is recognized when the facts are appropriate to create it. The proposition most favorable to the plaintiff, gleaned from the cases relied upon, is that the authority to borrow money is regarded in law as one of the most dangerous powers which may be conferred upon an agent, and the courts are slow to find that such a power may be implied. The wisdom of that policy may not be gainsaid, but it is not conclusive in the present case, and is not indicative that the power may not be held to be implied where the facts establish the necessity and the trustee has acted in good faith.

It may be assumed that in order to hold the trust estate liable the creditor, the defendant in this case, has the burden of proving that the power to borrow funds for trust purposes was within the scope of the trustees' authority. (2 Cor. Jur. 925.) However, when, as in the present case, the power has been shown, the further necessity to ascertain whether the funds borrowed have been applied to the purposes of the trust does not devolve upon the lender in the absence of bad faith or collusion on his part, and no claim is made that any bad faith or collusion existed. (Civ. Code, sec. 2244; 26 R. C. L. 1279.)

The foregoing renders it unnecessary to discuss other points raised on the appeal.

The judgment is reversed.

Rehearing denied.