[No. G003794. Fourth Dist., Div. Three. Dec. 17, 1987.]

KADISON, PFAELZER, WOODARD, QUINN & ROSSI, Plaintiff and Respondent, v.
THOMAS H. WILSON, as Co-Trustee, etc., et al., Defendants and Appellants.

COUNSEL

Martin, Cottle & Keen, Edwin P. Martin and Bertrand E. Cottle for Defendants and Appellants.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Paul B. George, J. David Oswalt, Janine K. Jeffery, McDermott, Will & Emery and David Sprowl for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—In this appeal we are asked to decide whether trust property is exempt from prejudgment attachment pursuant to Code of Civil

Procedure section 483.010.[1] For the reasons discussed below, we conclude it is not.

## I

Appellants Thomas Wilson and Marilyn Grandon are cotrustees of the testamentary trust of the estate of Huber Greer Wilson, their father. The principal asset of the trust is a parcel of real property located in Santa Ana, California valued at $10 million with a market rental value of $30,000 per month. The trustees retained Kadison, Pfaelzer, Woodard, Quinn & Rossi (Kadison) to represent them in three separate actions involving the trust property.[2]

Wilson advised Kadison, at the time the firm was retained, payment of fees and court costs would be made from the trust estate. But the trustees refused to pay the accruing legal fees. After Kadison incurred $24,699.26 in costs and $234,734.54 in fees, it filed the underlying lawsuit seeking payment and prejudgment attachment. The trustees opposed the application for attachment, asserting section 483.010, subdivision (c) precludes attachment of trust property. The superior court disagreed and issued a writ of attachment against the trust property.

---

[1] Section 483.010 provides: "(a) Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees. [¶] (b) An attachment may not be issued on a claim which is secured by any interest in real or personal property arising from agreement, statute, or other rule of law . . . . However, an attachment may be issued (1) where the claim was originally so secured but, without any act of the plaintiff or the person to whom the security was given, the security has become valueless or has decreased in value to less than the amount then owing on the claim, in which event the amount for which the attachment may issue shall not exceed the lesser of the amount of the decrease or the difference between the value of the security and the amount then owing on the claim, or (2) where the claim was secured by a nonconsensual possessory lien but the lien has been relinquished by the surrender of the possession of the property. [¶] (c) If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession. An attachment may not be issued on a claim against a defendant who is a natural person if the claim is based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where the property sold or leased, or licensed for use, the services furnished, or the money loaned was used by the defendant primarily for personal, family, or household purposes."

All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] As a result of one action, the trust's monthly rental income increased from $2,500 to $30,000. Kadison obtained judgment in favor of the trust in the second action. In the third matter, after a jury trial, judgment was entered against the trust in an amount less than half the plaintiff's prayer.

## II

Section 483.010, subdivision (c) prohibits a prejudgment attachment against a defendant who is a natural person unless the claim arises out of a trade, business, or profession. ■■ Wilson contends the trustees are natural persons and therefore not subject to prejudgment attachment because the claim did not arise out of a trade or business. We agree that Wilson and Grandon, acting as trustees, are natural persons. However, the Wilson trust is not. (3 Scott, Trusts (3d ed. 1967) §§ 2.2-3.1, pp. 37-45; 3 Scott, *op. cit. supra,* § 271A, p. 2287, fn. 1; Civ. Code, § 2216.) Because the trust is not a "natural person," section 483.010, subdivision (c) is inapplicable.

Even if the trust were considered a "natural person," Wilson's argument would be unavailing. Kadison's claim did arise out of conduct by the trust of a trade, business, or profession. Those terms "may be found to encompass almost any activity engaged in for profit with 'frequency and continuity'. . . ." (*Advance Transformer Co.* v. *Superior Court* (1974) 44 Cal.App.3d 127, 139 [118 Cal.Rptr. 350]; *Commissioner of Internal Revenue* v. *Nubar* (4th Cir. 1950) 185 F.2d 584, 586.)

■■ A purpose of the attachment statutes is to confine attachments to commercial situations and to prohibit them in consumer transactions. The language, "trade, business or profession," in section 483.010, subdivision (c) fulfills that purpose by limiting the use of attachments to "commercial transactions" and precluding them in "consumer transactions." (*Advance Transformer Co.* v. *Superior Court, supra,* 44 Cal.App.3d 127, 139-■■ ■■ No showing was made below that Kadison's representation should be characterized as a consumer transaction, and we find nothing in the record which would support such a conclusion. The trust's business was management of very valuable real property. ■■ ■■ ■■ ■■ Certainly, the retention of an attorney to protect the commercial assets of a trust estate valued at $10 million with a market rental value of $30,000 per month cannot be classified as a consumer transaction exempt from prejudgment attachment.[3]

---

[3] The Wilson trust provided: "[T]he trustee is vested with the following powers with respect to the trust estate . . . . [(f.)] To commence or defend such litigation with respect to the trust or any property or the trust estate as the trustee may deem advisable, *at the expense of the trust* . . . ." (¶ 12, italics added.)

Where, as here, the trust itself authorizes the trustee to defend any litigation which affects the trust property at the expense of the trust, and the trustee in the contract for services agrees payment is to be made out of the trust assets, the trust estate is subject to the claim of creditors. (*Purdy* v. *Bank of America N. T. & S. Assn.* (1935) 2 Cal.2d 298, 301 [40 P.2d 481]; 3 Scott, Trusts (3d ed. 1967) § 271, pp. 2283-2286.)

Applying the foregoing principles, the Wilson trust is liable on the Kadison contract. A trust is not a natural person and in the present case, we find no justification for excluding the trust estate from the prejudgment attachment statute. When a business incurs a contract debt, its assets are subject to attachment. The business may be called company, corporation, partnership, joint venture, trust, or nothing at all. It does not matter so long as the debt is of a commercial nature. Under the facts presented to the trial court, a prejudgment attachment of the trust estate was proper.

Judgment affirmed. Respondent to receive costs.

Wallin, Acting P. J., and Crosby, J., concurred.

A petition for a rehearing was denied January 7, 1988, and appellants' petition for review by the Supreme Court was denied March 2, 1988.