No. 31,862

M. G. VINCENT, Administrator with the Will Annexed of the Estate of John Akins, Deceased, BLANCHE AKINS WILCOX, MAUDE AKINS and LAURA C. BURKETT, *Appellants*, v. F. C. WERNER, Former Executor of the Estate of John Akins, Deceased, *Appellee*.

(38 P. 2d 687)

Opinion filed December 8, 1934.

B. *Hudson* and *Douglas Hudson,* both of Fort Scott, for the appellants.
C. O. *Pingry* and *Carl Pingry,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action originated in the probate court when certain legatees took exceptions to the accounts of an executor and trustee. The probate court decided in favor of the executor. The legatees and administrator with the will annexed appealed to the district court. There the action of the probate court was approved. The administrator appeals to this court.

F. C. Werner was named as executor in the will of John Akins. He qualified in December, 1916, and acted as such until he resigned on May 15, 1931. In addition to naming F. C. Werner executor, the will of John Akins made him trustee of a residuary estate provided for in the will. For the sake of convenience he will be referred to here as executor. The beneficiaries of this residuary estate are three daughters of John Akins. They are appellants in this action. Under the will Werner was given the power and authority "to invest any

fund or funds coming into his hands in responsible interest-bearing securities."

During the time that Mr. Werner was executor he filed fourteen accounts with the probate court, including the final account which covered the last two and five-sixths months.

On January 28, 1931, one of the beneficiaries filed a petition asking for the removal of Werner as executor. This application was heard and taken under advisement by the court. Before the cause was decided Werner resigned. M. G. Vincent was then appointed administrator with the will annexed. When Werner filed his final account exceptions to it were taken by the three beneficiaries. The probate court approved the accounts of the executor notwithstanding the exceptions, except for a modification whereby he surcharged the executor with $100 claimed for services under the final report, and $150 claimed for fees paid his attorneys in resisting the removal of the executor.

Appeal was taken by the administrator and the three beneficiaries to the district court. The notice of appeal was in the name of the three beneficiaries. The affidavit to this notice was executed by Vincent, the administrator with the will annexed. His name was not included in the notice. When the case came on to be heard in the district court the executor moved to dismiss it on the ground that the district court did not have jurisdiction. The court then permitted the amendment of the notice by inserting in the body thereof the name of Vincent. The executor objected to this and argues in this court that his motion to dismiss the appeal to the district court should have been sustained.

That contention will be settled before we deal with the merits of the action. The statute which provides for appeals to the district court and upon which the executor relies is R. S. 22-1102. It is as follows:

"All appeals shall be taken within thirty days after the making of such decision. Notice of such appeal shall be given in open court and entered on the record or by written notice to the opposite party, or his attorney of record; proof of the service of such notice must be made by affidavit of the party taking the appeal showing service of such notice, which affidavit must be filed with the probate court."

The executor points out that the proof of the service of this notice was an affidavit signed by the administrator. It is argued that the administrator did not take the appeal since his name did not appear in the body of the notice. Hence, the notice of appeal

was defective, since the time for appealing was long past when the amendment was made inserting the name of Vincent. At the hearing on the motion to dismiss the affidavit of the stenographer who prepared the notice of appeal was introduced. This affidavit was to the effect a lawyer, since deceased, had dictated the notice, and it had been the intention to appeal on behalf of the administrator; that the appeal was not taken for the purpose of vexation or delay and that the name of Vincent was omitted from the body of the notice through inadvertence.

The answer to the argument of the executor is found in R. S. 60-3310. That section is as follows:

"Any notice of appeal may be amended at any time by bringing in additional parties or otherwise, before the hearing, as to the appellate court may seem fit, and in case such court shall deem it necessary that it have papers or entries that have not been transmitted to it, it may require their immediate certification and transmission."

In the case of *Ryan v. Cullen,* 89 Kan. 879, 133 Pac. 430, the court refused to dismiss an appeal where several remaindermen were not made parties. The court considered and decided the case on its merits even though the notice in that case was not actually amended. In the case of *Boss v. Brown,* 132 Kan. 86, 294 Pac. 878, the appeal was taken from the judgment and verdict only. When it became apparent that all the errors of which complaint was made related to rulings of the trial court this court granted leave to the appellant to amend his notice, under R. S. 60-3310. To a similar effect is the case of *Sheridan v. Phillips Pipe Line Co.,* 134 Kan. 260, 5 P. 2d 817. In that case the bond given ran to a different oil company altogether. The court permitted the amendment of the bond to show the correct company. The Sheridan case contains a comprehensive discussion of the cases. In this case it is plain that the intention was to appeal on behalf of the administrator, and that the name was omitted inadvertently. It is plain that the executor was not misled in the preparation of his case. Indeed, it was stated by the executor that he only discovered the omission of the name of Vincent from the notice the night before the motion to dismiss the appeal was argued on December 29, 1932. In view of all these circumstances we have concluded that the motion to dismiss was technical in the extreme. Certainly the ends of justice were best met by overruling the motion.

The executor next argues that the questions raised by the appel-

lants here were not properly raised before the trial court. The statute on this matter is R. S. 22-915. It is as follows:

"When the account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his filing exceptions to the account at any time within six months thereafter; and upon every settlement of an account by an executor or administrator, all his former accounts may be so far opened as to correct any mistake or error therein," etc.

The journal entry of the probate court contains the following recitation:

"Thereupon there is filed by Blanche Akins Wilcox, Maude Akins and Laura C. Burkett their exceptions to the final report and all previous reports of F. C. Werner as executor."

The executor argues that there were no exceptions actually filed, and that on that account there was nothing before the probate court. This question was not raised by the executor in district court, but is raised for the first time in this court. The hearing in probate court was upon the question of the approval of the reports of the executor. Nothing was necessary to be filed for this hearing to be had other than the transcript and what happened in the probate court, the notice of appeal, affidavit of appeal and bond. (See R. S. 22-1102, 22-1103 and 22-1104.) The appeal is from the order approving these accounts. The statute referred to is the provision for opening an executor's accounts where they were settled without notice to an interested party. All the questions urged here were raised by appellant before the trial court when requested findings of fact and conclusions of law were submitted covering every phase of the case.

The executor argues that no motion for a new trial was filed after the findings of fact and conclusions were finally made. What happened was that the court made findings of fact and conclusions of law, then each side filed motions for a new trial and to modify the findings. The court did modify the findings in favor of the executor and denied the motion of appellants for a new trial. No further motion for a new trial was necessary. With these preliminary questions out of the way we will consider the case on its merits.

The first ruling of the trial court of which appellant complains is that the manner in which the executor handled the money belonging to the estate did not constitute such commingling of this money

with his own funds as to make him liable for compound interest on the difference between what he stated in his report was on hand and what was actually on hand. There can be no doubt that the executor commingled the funds that he held as executor and his private funds. His testimony is convincing that this was true. In fact, the trial court did not directly find to the contrary. The court found:

"He deposited some of the money belonging to the estate in his own personal bank accounts in various banks in Pittsburg, Kan., and he kept some of the money belonging to the estate in safety-deposit boxes in the bank and in his own safe in his office, having a sufficient amount of money at all times to cover all balances due the estate of John Akins, deceased, but commingled some of the money of the estate with his own."

The executor occupied a fiduciary relation of the very highest order with respect to the fund in question. There is a strict rule relative to the duties of executors in keeping their accounts. In 65 C. J. 898 the rule is stated as follows:

"The burden is on the trustee to exhibit a clear and satisfactory account, all doubts and obscurities being resolved against him, and any items whose accuracy is not sufficiently established by him will be rejected."

In the case of *McKibben v. Byers,* 138 Kan. 216, 25 P. 2d 357, this court said:

"Byers rested under a duty to McKibben to keep and render clear and accurate accounts with respect to conduct of the business in which they were engaged. The burden of proof was on Byers to show he was entitled to each credit he claimed. Mere failure to keep proper accounts and to preserve vouchers may result in failure to establish claimed credits; and failure to produce vouchers may require application of the presumption that if the best evidence were produced it would be against allowance of the credit." (p. 221.)

In the accounts of the executor it is manifest that at the time each report was made there never was at any time the amount of cash in the account of Werner as executor that his report stated. By agreement of the parties the accounts of the executor were audited, and the auditor's report, as well as the evidence of the executor himself, showed this condition. The explanation of this offered by the executor was that he had $8,500 in currency in a lock box. When interrogated about this he could not tell how this amount of cash was accumulated nor how it was disbursed. He stated on redirect examination that he built up this cash out of the checks on the Preston, the Christian, the Dorrell and the Wright loans. The trouble about this explanation is that he had testified that he put the proceeds of these loans in his personal account, and

gave as a reason for it that such a course was necessary in order to enable his clerks to handle matters in his absence.

The trial court took the view that all that was necessary for the administrator to do was to account for all the money that was turned over to him or came into his hands. The basis of the claim of appellants is that the estate is entitled to receive interest on all the money belonging to the estate that was carried in the personal account of the executor, and thus commingled with his own funds. The money of this estate never at any time belonged in the personal bank account of the executor. In the case of *Charles v. Witt*, 88 Kan. 484, 129 Pac. 140, this court said:

"The allowance of compound interest against the guardian was not error. In *Gassell v. Gassell*, 147 Cal. 510, 82 Pac. 42, the guardian mingled the wards' funds with his own without any authority from the court, and failed to keep an account from which an accounting could be rendered. The court held that it was not error to charge him with compound interest although he was guilty of no fraud. This rule is applicable alike to guardians and executors as to other trust relations. (1 Church, New Probate Law and Practice, p. 204; *Guardianship of Dow,* 133 Cal. 446, 65 Pac. 890, 892.)" (p. 493.)

In the case of *Purdy v. Johnson*, 78 Cal. App. 310, the court approved the charging of compound interest upon the funds of the beneficiary used improperly. The court said:

"The rule is not adopted for the purpose of punishing the trustee for any intentional wrongdoing in the use of the trust funds, but rather to carry into effect the principle, enforced by courts of equity, that a trustee shall not be permitted to make any profit from the unauthorized use of such funds; it is intended to secure fidelity in the management of trust estates in order to fully realize any profit that the trustee may have made." (p. 319.)

See, also, *Brown v. Tydings*, 149 Md. 22.

The theory argued by the executor and followed by the trial court is that the executor only had to be able to pay the amount of money that had come into his hands as trustee, on demand. This is not the rule. The law is extremely jealous of what is done with the beneficiaries' money by a trustee. He must keep it by itself. To approve the commingling of the beneficiaries' money with that of the trustee would subject the trustee to too great a temptation to use this money and cover up the fact with one subterfuge or another. As good a way as any to guard against this is to hold that the trustee is liable to the beneficiaries for compound interest on the money of the beneficiaries which the trustee thus commingles with his own.

During the trial of this case an audit of the accounts of Werner was made pursuant to agreement of both parties. The auditor testified that in making this audit he used the original reports filed with the probate court, paid checks and receipts that were on file in probate court, Werner's cash book, check stubs and certain paid checks which Werner had in his possession. He also used duplicate deposit slips furnished by him. This report enables us to ascertain just how much cash the executor had on hand in his account as executor at the time of making his report, also how much he reported he had on hand. It would not serve any good purpose to set these accounts out here. Suffice it to say that the interest on these amounts compounded at six per cent would amount to $5,844.13. The account of the executor should be surcharged in that amount. In reaching that conclusion we are aware of the rule that is urged upon our attention that the trial court found the facts against the contentions of appellant, and that this court will not disturb a finding of fact where it is based on any substantial evidence. In the first place, the trial court did not find absolutely that there had been no commingling, and, in the second place, this court has examined the record carefully, and in view of the vagueness, ambiguity and contradictory statements of the executor with reference to the cash that is supposed to have been carried in a safety-deposit box, is not very well impressed with the story.

The next point argued by appellant has to do with the commissions collected and retained by the executor on loans and insurance sold to himself as executor. There is but little dispute as to this item. The trial court found that this amounted to $1,351.84. On the motion of the executor to modify these findings the trial court held that the overhead cost of doing this business should be deducted from the amount first found, and surcharged the accounts of the executor with the amount of only $443.85. Appellant contends that this was error and that the accounts should have been surcharged in the entire amount.

In this connection no one disputes the fact that the executor was not entitled to any commissions for anything he did for the estate. He must get any return to which he is entitled from the compensation allowed him by the probate court. Any expense to which the executor is put should have been claimed by him in probate court and supported by a voucher. This is provided by R. S. 22-909 and

22-913. No attempt was made by the executor to comply with these sections. The American Law Institute has dealt with this question, Restatement, Trusts, Tentative Draft No. 3, section 197, Comment (q), wherein it is said:

"The trustee . . . is chargeable with a bonus or commission received by him in breach of trust for acts done in connection with the administration of the trust."

This statement is amply supported by authorities.

In the case of *Magruder v. Drury*, 235 U. S. 106, the district court of the District of Columbia and the court of appeals of the District of Columbia held that an executor and trustee who was a partner in a firm that had sold loans to a trust estate was entitled to retain the commissions because they arose out of the loan business in which he was a partner and was not a profit of the estate. The supreme court of the United States did not agree with this. The court said in part:

"It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in anywise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. 'It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.' *Michoud v. Girod,* 4 How. 503, 555." (p. 119.)

We conclude, therefore, that the trial court erred in this respect, and that the accounts of the executor should be surcharged with the sum of $1,351.84 rather than only $443.85.

The next point argued by appellant has to do with some bonds Werner sold himself as executor. The facts of this matter are about as follows: Some time prior to June 15, 1929, F. C. Werner was interested with other persons in the acquisition of the Joplin-Pittsburg Railroad Company. Werner and associates purchased the property out of receivership. The total investment, including working capital, was $127,500. Werner advanced $10,000 and for that $10,000 received $14,800 worth of bonds and $14,800 worth of stock of the new corporation. The property was acquired out of receiver-

ship in the spring of 1929. Sometime between March 15 and March 19, 1929, Werner, who then owned personally this $14,800 of bonds and $14,800 worth of stock of the Joplin-Pittsburg Railroad Company, sold to himself as executor $9,500 of these bonds at par. Ignoring the common stock received by Werner, these bonds only cost him $67.50 per $100, so that, by selling them to himself as executor, he realized a profit of $3,081.80. Some time later through a fortuitous transaction the company was able to pay part of these bonds off and $7,500 of them were taken up by the company at par, leaving $2,000 of them in the estate. The executor argues and the trial court held that because the estate received back $7,500 of the bonds that the entire transaction is cleared up except that the $2,000 of bonds should be delivered to him and his accounts should be surcharged with $2,000. The matter with which we are concerned, however, is the profit made by Werner in the first place. He made this profit by selling bonds which he owned personally, to himself as executor. This cannot be done for the reasons set out heretofore in this opinion. Here again the American Law Institute has given us a rule. In Restatement, Trusts, Tentative Draft No. 3, section 197, Comment "P," it is said:

"If the trustee in breach of trust sells his individual property to himself as trustee, he is chargeable with any profit which he makes thereby."

This rule is sustained by *Magruder v. Drury*, supra, and other cases. It is followed by this court. See *Crowley v. Nixon*, 132 Kan. 552, 296 Pac. 376, and cases there cited. This court has steadfastly refused to inquire as to whether the transactions were beneficial to the estate. If the executor or trustee makes a profit out of a transaction the entire transaction is void and the profit, if any, goes to the estate. (See *Peoples B. & L. Ass'n v. Severns*, 140 Kan. 148.)

We conclude, therefore, that the account of the executor should be surcharged with the amount of profit made by him out of the bond transaction, or $3,081.80.

The next point argued by appellant has to do with the compensation allowed the executor by the probate court. These allowances were approved by the trial court. Sufficient has been said already in this opinion to make it plain that this court concludes that Werner was a faithless trustee. As such, he is not entitled to any compensation.

In *In re Simmons Estate*, 136 Kan. 789, this court said:

"In *Dryfoos v. Cullinan*, 17 Kan. 452, the court had under consideration the question of whether an administrator who had been guilty of waste and unfaithful administration was entitled to compensation. The court held that he was not. It was said: 'When a person is unfaithful to a trust confided in him, and compels the parties interested therein to resort to litigation to protect their rights, he forfeits his right to compensation for his services.' (p. 454.)" (p. 790.)

See, also, *Lewis v. Ingram*, 57 F. 2d 463.

The court should examine each account filed by the executor and surcharge the account of the executor with the amounts paid the executor as compensation from the time when he was first appointed. This is in accordance with the rule laid down in *Shintaffer v. Bell*, 134 Kan. 101, 4 P. 2d 764. There this court said:

"The executor stresses the annual settlements approved by the probate court. Annual settlements are not strictly settlements. They are *ex parte* exhibitions of accounts, without notice even by publication. When approved, they are of *prima facie* correctness only, unless there is contest and actual adjudication. In this instance, from interest items and lists attached to the annual accounts, it was inferrable funds of the estate were from time to time being converted into securities other than those contained in the inventory with which the executor was charged. Conceding but not deciding that approval of an annual account was *prima facie* an adjudication that the executor was entitled in balancing his account to credit for the new securities, the statute expressly provides that at any settlement of account all former accounts may be surcharged of items not actually disputed, allowed through error or mistake. (R. S. 22-915.) In this instance it was egregious error to allow the executor credit for worthless securities which he took under circumstances which made his conduct equivalent to bad faith." (p. 106.)

The judgment of the trial court is reversed with directions to enter judgment for the appellants in accordance with the views herein expressed.