(692 P.2d 400)
No. 56,415

In the Matter of the Estate of Gennade V. Engels, Deceased.

Opinion filed December 27, 1984.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, for the appellant DeLoy Rogge, Administrator CTA.

*Walter P. Robertson*, of Junction City, for the appellee Allen E. Ehlebracht.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge Assigned; and FREDERICK WOLESLAGEL, District Judge Retired, Assigned.

FOTH, C.J.: DeLoy Rogge, Administrator CTA, appeals from several rulings regarding Gennade V. Engels' estate. They involve attorney fees for the efforts of appellee Allen E. Ehlebracht to probate a later will of the decedent and Ehlebracht's conduct as executor and special administrator.

The decedent, Gennade Engels, learned that she had Lou

Gehrig's disease during the first months of 1980. Acknowledging her mortality, Gennade executed a will on April 23, 1980. She had apparently drafted or executed a number of wills prior to 1980, but these wills have not been found. The April will left her entire estate to her seven children; in the will, Gennade stated her intent was to treat her children as equally as possible. During the preparation and execution of this will, Gennade did not express dissatisfaction with any of her children.

As her disease progressed, Gennade's ability to express herself verbally and to walk under her own power decreased dramatically. During the fall of 1980, her brother, Allen Ehlebracht, talked with an attorney, Walter Robertson, about the legal problems Gennade would face as her illness deepened. Robertson later visited Gennade and Ehlebracht to discuss these problems. Eventually, Gennade told Robertson that due to trouble within her family, she wanted to leave her entire estate to her minor daughter Normay. Gennade then changed her mind and determined that Allen Ehlebracht and his son should be given her home, with the residue going to Normay. On November 25, 1980, Gennade executed a new will incorporating this change of mind.

Gennade's illness worsened, and in July, 1981, she moved into a nursing home. She apparently wanted her daughter DeLoy to move into her residence. Before DeLoy had an opportunity to move, Allen Ehlebracht changed the locks and moved his son into the house. By the summer of 1981, Gennade no longer could handle financial matters so Ehlebracht set up a joint checking account for her and himself, although she did not sign the signature card. Payments on a contract for deed (on property Gennade had sold in South Dakota) were deposited in this joint account. These payments continued to be deposited in this account after Gennade's death. This contract and the residence were the chief assets of the estate.

Gennade Engels died on January 6, 1982, and Ehlebracht petitioned for probate of the November, 1980, will. The district court admitted the will, and named Ehlebracht as the executor. Subsequently, Gennade's children filed motions to set aside the order admitting the November will and to admit the April will. The district court vacated its prior order admitting the November will, and named Ehlebracht special administrator of the estate. He was instructed to collect and conserve the income and assets

of the estate, and to pay only those claims that the district court approved.

The children soon suspected Ehlebracht was using estate funds for his own personal benefit. Based on this suspicion, they asked the district court to issue an order restraining Ehlebracht, which the court did on August 26, 1982. Four days later, they filed a motion requesting the court to: remove Ehlebracht as special administrator and order an accounting; determine whether Ehlebracht had converted estate funds; and determine whether Ehlebracht was liable for allowing his son to live in Gennade's home rent-free. Hearing on the motion was scheduled for September 2, 1982.

On September 2, attorneys for Ehlebracht and the children met and agreed, as their clients directed, that Ehlebracht would withdraw his petition to admit the November, 1980 will, and would file an accounting of his acts as special administrator. They also agreed that the other matters scheduled for hearing that day would be continued. Ehlebracht's attorney agreed to draft a journal entry incorporating the terms of the agreement, and proceeded to do so. The journal entry was signed by both attorneys, but was never filed with the court.

Upon learning that the journal entry had not been filed the children sought judicial enforcement of the September 2 agreement. Prior to the hearing on this matter, the court removed Ehlebracht as special administrator. In March, 1983, the court concluded that the September 2 agreement had been a compromise and settlement. The court ruled that Ehlebracht had to withdraw his petition for probate of the November will, and set the other matters (accounting, conversion, and rent issues) for hearing. Subsequently, the court admitted the April, 1980, will to probate.

While the above proceedings progressed, Ehlebracht filed a motion seeking $4059.90 (later increased to nearly $4600) in attorney fees for services rendered the estate. This motion came on for hearing on May 31, 1983. The court ordered briefs on the issue of whether the September 2 agreement barred recovery of attorney fees. No evidentiary hearing was held on the attorney fee issue.

In August, 1983, an evidentiary hearing was held concerning the accounting, conversion, and rent issues. After hearing testi-

mony, the court approved Ehlebracht's final accounting. The court found that Ehlebracht had converted $1947.58 in estate funds for his own use, but refused to impose a double penalty on Ehlebracht pursuant to K.S.A. 59-1704; determined that Ehlebracht was not liable for rent during the months he allowed his son to use Gennade Engels' home; disallowed a $319.88 claim for attorney fees on the basis that Ehlebracht, and not Gennade Engels, had been the client with regard to the preparation of the November will. Finally, the court awarded $2000 in attorney fees to Ehlebracht for his efforts in prosecuting the November will. This appeal followed, raising four issues requiring determination.

■ Did the September 2, 1982, settlement of the will contest bar a subsequent award of Allen Ehlebracht's attorney fees?

The district court, in March, 1983, ruled that the September 2, 1982, agreement entered into by the parties was a compromise and settlement. After receiving briefs and hearing argument by counsel, the court determined that because the compromise and settlement neither referred to nor reserved the issue, Allen Ehlebracht's claim for attorney fees was not barred.

The agreement, found by the trial court to be incorporated in the typed "order" of September 2, is a written instrument. This court is therefor free to determine its construction and legal effect. *Hall v. Mullen*, 234 Kan. 1031, 1035, 678 P.2d 169 (1984). In making this determination, the general construction rules of compromise and settlement agreements apply.

The law favors compromise and settlement. See *International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, Syl. ¶ 1, 393 P.2d 992 (1964). A compromise and settlement generally bars pre-existing claims directly tied to the settled dispute. See 15A C.J.S., Compromise and Settlement § 4. Despite this, a compromise only settles the issues the parties intended to settle. See *Maltby v. Sumner*, 169 Kan. 417, 219 P.2d 395 (1950). A compromise agreement must be construed in light of its language and the circumstances surrounding its making. See 15A Am. Jur. 2d, Compromise and Settlement § 23. More importantly, however, construction of a compromise agreement involves ascertaining and then giving effect to the mutual intentions of its makers. See *Washburn v. Washburn*, 204 Kan. 160, 161, 460 P.2d 503 (1969). The key question to be resolved in this

case is whether the parties intended the agreement to bar any attorney fee claim.

We construe the settlement as encompassing the attorney fee issue, based on the following factors.

First, the agreement was clearly intended to settle the will contest, and fees for proposing the November will were directly tied to that contest. In the absence of language to the contrary, it must be presumed the parties intended to settle the entire dispute.

Second, the agreement specifically reserved two questions for future determination, i.e., Ehlebracht's liability for conversion and for rent of the residence. If attorney fees before the time of settlement were also to be reserved, the agreement should have said so.

Third, if such fees were to be allowed, it could only be on a finding that Ehlebracht acted "in good faith" in proposing the November will. K.S.A. 59-1504. If the November will was procured through Ehlebracht's undue influence, there would be a substantial question of his good faith in offering it for probate. Thus his entitlement to fees would depend in large measure on the same evidence that would have been required in the will contest which was settled. It seems highly unlikely that the parties intended to settle the will contest to avoid the acrimony and expense of litigating the undue influence issue, and yet face the same acrimony and expense to litigate the same issue in a fee controversy. If the heirs had known Ehlebracht intended to pursue such a claim at a later date, they might well have declined the settlement.

We conclude that the settlement of September 2, 1982, precluded Ehlebracht's claim for his attorney fees, and their allowance must be reversed.

■ Did the district court err in not imposing a conversion penalty on Allen Ehlebracht pursuant to K.S.A. 59-1704?

It is undisputed that Allen Ehlebracht converted $1947.58 of estate funds during his tenure as executor and special administrator. Ehlebracht testified he believed he could use the funds for his personal needs, and that no one told him that he could not. Before trial on this matter, he reimbursed the estate in the amount of $2000. Based on this evidence, the court determined that Ehlebracht's conversion was in good faith and without an

attorney's advice. Because of this, K.S.A. 59-1704's penalty provision was not invoked.

K.S.A. 59-1704 provides that:

"If any person embezzles or converts to his or her own use any of the personal property of a decedent or conservatee, such person *shall* be *liable* for double the value of the property so embezzled or converted." Emphasis added.

Ehlebracht's use of estate funds for his personal benefit was conversion, regardless of his professed belief that he could spend the money. See *Speer v. City of Dodge City*, 6 Kan. App. 2d 798, ¶ 1, 636 P.2d 178 (1981). Under the provisions of 59-1704, once a conversion by a fiduciary is found, the fiduciary "shall be liable" for double the amount converted. The legislature's use of the word "shall" indicates to us that the penalty is mandatory.

In *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973), an innocent surety was held not liable for the penalty because 59-1704 was intended to punish wrongdoers. In construing 59-1704, the court declared that it is exemplary in character. 211 Kan. at 403.

"Exemplary or punitive damages go beyond actual or compensatory damages in that they are imposed, not because of any special merit in the plaintiff's case, but to punish the wrongdoer for his willful, malicious, oppressive or unlawful acts and to deter and restrain others from similar wrongdoings." 211 Kan. 397, Syl. ¶ 4.

Thus the purpose of the statute is to punish the fiduciary who converts funds and to warn others that the conduct is improper. The failure to impose the penalty neither punishes Ehlebracht nor deters other fiduciaries from similar misconduct. The trial court erred in not imposing the conversion penalty.

■ Did the district court err in ruling that Allen Ehlebracht was not liable for rent for the nine-month period he allowed his son to live in Gennade V. Engels' home?

Ehlebracht's son moved into Gennade's home four months before her death, and after her death he continued to reside there an additional nine months, or until October 1, 1982. No rent was paid before or after Gennade's death. Relying on evidence that the home had not been rented since Ehlebracht's removal as special administrator and on testimony of realtors which the court believed indicated the realtors would not have leased the property, the district court ruled Ehlebracht was not liable to the estate for rent. This ruling is erroneous both because it is not

supported by the evidence and because it fails to recognize the duty imposed on a fiduciary not to profit from a position of trust.

The realtors who testified were never asked whether they would have attempted to lease the property. The district court's belief that the realtors testified they would not have leased the home is simply not supported in the record. It is true that the parties who acted as special administrator after Ehlebracht was removed did not lease the property but the circumstances surrounding the estate changed a great deal after Ehlebracht's removal. The first of the two special administrators, a bank, believed its appointment was on a short-term basis, so the cost of preparing the home for tenants made leasing economically impractical (though it would have generated some profit for the estate). The second special administrator, rather than leasing, prepared the property and furnishings for sale and an auction. Although these two did not rent the estate property, the district court erred in deducing that Ehlebracht had no rent liability.

Unlike his successor fiduciaries, Ehlebracht permitted a person to use the home as a residence. He created a tenancy relationship, but did not collect any rent. One of Ehlebracht's duties as special administrator was to collect and conserve the estate's income and assets. Ehlebracht failed to carry out this duty when he did not charge rent.

Furthermore, the tenant was Ehlebracht's son. Although the son received the most visible benefit from the rent-free living arrangement, Ehlebracht also profited. Leases of estate property executed by a personal representative to his child are voidable unless expressly authorized by will or the court. K.S.A. 59-1703. Implicit in this restrictive provision is the concept that a parent benefits when he provides housing for his offspring. Ehlebracht is liable for the reasonable rent for nine months that his actions deprived the estate from receiving during his administration.

The realtors indicated that they believed the home could have rented for between $300 and $350 per month, unfurnished. Although this evidence provides some basis for determining the rent liability, the matter must be remanded to the district court to fix the amount.

■ Did the district court err in approving Allen Ehlebracht's final accounting?

In approving the final accounting, the district court concluded

that the $2000 Ehlebracht returned to the estate exceeded the amount he converted. In reviewing an accounting, an appellate court's review extends only to a search of the record to determine whether the district court's findings are supported by substantial competent evidence. An appellate court neither weighs the evidence nor assesses the credibility of witnesses, but rather determines whether the evidence, viewed in the light most favorable to the party prevailing below, supports the district court's judgment. See *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977).

Although the administrator quarrels with a number of small credits claimed, totalling some $236.06, the evidence must be viewed in the light most favorable to Ehlebracht. One who administers a decedent's estate has the burden to prove his final accounting is correct. See *In re Estate of Mellott*, 1 Kan. App. 2d 709, 574 P.2d 960 (1977), *rev. denied* 225 Kan. 844 (1978). Ehlebracht had no documentary proof that the $236.06 had been spent for estate purposes. The accountants and Ehlebracht indicated that the payments were for the benefit of the estate, however, and the district court apparently believed them. There is thus substantial evidence to support the court's finding that the $236.06 was spent for estate purposes. That sum, together with the $2000 repaid, exceeded the amount converted plus all other charges sought to be imposed. Except for the items discussed earlier in this opinion the approval of the accounting must therefore be affirmed.

Except as to the items listed below, the judgment is affirmed. As to the following items the judgment is reversed and the case is remanded to the district court to (a) disallow attorney fees for the probate of the November will; (b) impose the conversion liability provided in K.S.A. 59-1704; and (c) charge the special administrator for the reasonable rent of the decedent's residence during the nine months it was occupied by the administrator's son following decedent's death.